# Exhibit "F"



**TROYGOULD PC**
1801 Century Park East, 16th Floor
Los Angeles, California 90067-2367
**Tel** (310) 553-4441 | **Fax** (310) 201-4746
www.troygould.com

John C. Ulin • (310) 789-1224 • julin@troygould.com

File No. 04316-0002

January 3, 2025

<u>**BY ELECTRONIC MAIL**</u>

Jordan A. LaVine, Esq.
Flaster Greenberg PC
1717 Arch St.
Suite 3300
Philadelphia, PA 19103
Jordan.LaVine@flastergreenberg.com

      Re:    LA Golf Trademarks

Dear Mr. LaVine,

      The law firm of TroyGould P.C. has been retained as counsel for the purposes of resolution of all disputes (including potential litigation) involving the intellectual property rights of LA Golf Partners LLC ("LA Golf"), who as you know is the owner and senior user of the "LA Golf", "LAGP", and "LA Golf Club" Trademarks in the United States and around the world. As you are likely aware, the "LA Golf Club" TM matured to registration with the USPTO on December 17, 2024 (see attached).[1]

      This letter constitutes a final demand to cease and desist from the intentional and damaging infringement of these marks and the LA Golf / LA Golf Club names by your clients, TGL and Los Angeles Golf Club (the "Golf Club"). Simply put, your clients are not going to be using our client's name and brand any longer, and this office has been retained to defend the brand and to take action to eliminate threats of infringement of that brand in every jurisdiction around the globe.

      Specifically, to put an end to the ongoing infringement of LA Golf's trademark rights and to avoid further damages mounting, TGL and the Golf Club need to confirm prior to January 7 that they will:

- Immediately cease using the names "LA Golf Club", "LA Golf", or "LAGC" in any manner or on any platform - instead using "Los Angeles Golf Club" only;

---

[1] Kenneth Wilton from Seyfarth Shaw LLP is cc'd on this correspondence because his office has attempted to reach a resolution with TGL and the Golf Club on this matter for the past year, and Seyfarth continues to handle all of LA Golf's ongoing intellectual property activities.



Jordan A. LaVine, Esq.
January 3, 2025
Page 2

- Immediately cease using and profiting from the "Stylized LA Golf" logo, which appears on the best-selling LA Golf hoodies; and

- Take all other necessary measures to dispel actual and potential confusion in the marketplace caused by their unauthorized use of LA Golf's trademarks (including placing a reasonable and sufficient disclaimer on the TGL and Golf Club websites).

By way of brief background, this final demand follows more than a year of efforts by LA Golf to convince TGL and the Golf Club to stop infringing its marks and to co-exist (even as partners) in the market. Those efforts have proven futile and this letter has become necessary due to LA Golf's need to protect its LA Golf and LA Golf Club trademarks in connection with its own ongoing and upcoming business activities, and in light of your clients' upcoming launch of the TGL on national television January 7, 2025, and TGL and Los Angeles Golf Club's unauthorized use of LA Golf's trademarks in connection with that launch.

As you know, upon the announcement of the TGL and the Golf Club, LA Golf informed your client(s) immediately, in an October 2023 Letter, that your clients' use of the name "Los Angeles Golf Club" and other abbreviations of that name were already causing confusion in the marketplace, and that further unauthorized use of "LA Golf" or "LA Golf Club" (which were already being used by your clients in different forms) would be blatant trademark infringement and would lead to additional confusion, likelihood of confusion, and damages to a brand that LA Golf has spent over $50 Million building during the past 5 years.

A subsequent meeting between the business principals in February 2024 was abruptly cancelled by the Golf Club on the day before it was scheduled, in order to "put the relationship on ice," as your client put it. At the same time TGL and the Golf Club stopped using the name "Los Angeles Golf Club," and instead began referring to the Golf Club consistently as "LA Golf Club" or "LAGC" – both in marketing paid for by TGL, and in self-marketing and promotion by the Golf Club.

Further doubling down on the intentional infringement, the Golf Club then took the additional step of copying the Gothic Stylized LA Golf logo and Gothic Brand Name used on LA Golf's popularly-sold hoodies and t-shirts (see photos attached), even after being informed that use of these designs constituted infringement and was likely to cause confusion. The Golf Club copied and used logos and designs that LA Golf had created and made successful for years before the Golf Club even existed, and the Golf Club plastered its infringing logos on hoodies, shirts, hats – whatever it could sell (see photos attached).



Jordan A. LaVine, Esq.
January 3, 2025
Page 3

The Golf Club even blew up its infringing logo on the side of a van it uses to market itself at golf-related events around California (see photo attached).

      Examples of the confusion caused by these actions are too numerous to present in detail here. But it's time for the confusion to stop before further damage is done.

      With TGL launching on national television on January 7, 2025, obviously all such use of "LA Golf Club" and the LA Golf logos and branding must cease by or before that date. But as stated above, LA Golf's ongoing business activities independently mandate my client's immediate need to eliminate these infringing uses of its LA Golf and LA Golf Club trademarks.

      For example, after having raised an 8-figure capital round this past year featuring a multi-faceted partnership with Discovery Land Company (despite numerous investors expressing concern over the Golf Club's overt and continuing acts of infringement), LA Golf is now in the midst of raising over $100M in additional capital from outside investors, many of whom are actively expressing the same concern.

      This capital raise is driven not only by the upcoming launch of the LA Golf's new innovative driver in partnership with Bryson DeChambeau, but also by the expansion of the LA Golf Club entertainment lounges and the expansion of the LA Golf Lifestyle apparel aspects of the brand.

      As you were informed in Seyfarth Shaw's October 2023 letter, LA Golf has been running events out of the Beverly Hills "LA Golf Club" since before TGL announced its existence and has always had plans and proposed partnerships to expand that concept into larger consumer-facing entertainment venues. Now those aforementioned plans are coming to fruition with the planned launch in 2025 of the 20,000-plus square foot "LA Golf Club" near Downtown Los Angeles.  And LA Golf is currently putting partners into place to assist in opening additional "LA Golf Club" entertainment lounges in other locations.

      These "LA Golf Club" lounges will also be the main retail hubs for LA Golf Lifestyle apparel, which will feature a further aggressive expansion of, and infusion of capital into, the popular LA Golf branded clothing and apparel products we have sold using LA Golf's trademarks since before TGL and the Golf Club ever existed.

      In light of these business plans, LA Golf has already shown that its willingness to protect and defend its marks in the United States and throughout the world, and LA Golf is prepared to continue to spend what it takes in each of these jurisdictions to protect its rights – for as long as it takes.



Jordan A. LaVine, Esq.
January 3, 2025
Page 4

      LA Golf prefers to resolve this dispute quickly and without the need for further escalation.  However, if litigated, we are confident that TGL and the Golf Club's overt acts of intentional trademark infringement and unfair competition would give rise to significant compensatory and punitive damages. Moreover, injunctive relief would severely limit TGL and the Golf Club in terms of what marks and logos they can use to sell, promote, and merchandise for, a team in the league's second biggest market – a true no-win situation for TGL and Golf Club – if they choose to continue down a path of obstinance and non-cooperation.

      We look forward to hearing from your office regarding confirmation of your client's willingness to comply with the demands outlined above and to cease their unauthorized use of LA Golf's trademarks.

                                           Sincerely,

                                           John C. Ulin

CC:    Kenneth L. Wilton, Esq. (kwilton@seyfarth.com)